IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GRACE NEEBE,** as Administratrix of the Estate of Louis Neebe, Deceased, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>**RAVIN CROSSBOWS, LLC, et al.,**<br><br>*Defendants*. | Case No. 2:19-cv-04934-JDW |

## **MEMORANDUM**

Dan Neebe shot himself in the foot with a crossbow. The question is whether it was user error or a product defect that caused the accident. But there's a problem getting proof about the incident. Mr. Neebe was alone when it happened, and he died of unrelated causes before anyone took his testimony. As the old saying goes, "Dead men tell no tales." And with no witnesses to the incident, Mr. Neebe's widow Grace Neebe has to rely on hearsay statements that Mr. Neebe made before his death to try to prove what happened. But the Rules of Evidence only allow hearsay in limited circumstances, and none of those circumstances applies here. The Court therefore cannot consider Mr. Neebe's statements. Without any evidence about what happened, Mrs. Neebe finds herself left to rely on the testimony of an expert witness who acknowledges that he does not know why Mr. Neebe's crossbow fired. Without any evidence of what caused the accident, Mrs. Neebe cannot prevail on any of her claims, so the Court will grant Defendants' Motion for Summary Judgment.

I.  **BACKGROUND**

   A.  **The Accident**

Mr. Neebe was deer hunting with a Ravin crossbow on Christopher Green's property on November 1, 2017. At some point, Mr. Neebe shot himself in the foot with his crossbow, sustaining a serious injury. He pulled the bolt out of his foot, climbed out of the tree stand, walked across the property to his car, and drove himself to the hospital. He was alone the whole time.

   B.  **The Evidence**

On his drive to Doylestown Hospital, which took approximately 25-30 minutes, Mr. Neebe made two calls, one to Mrs. Neebe and one to Mr. Green. He did not reach either of them, so he left voicemails. In the voicemails, which the parties have not produced, Mr. Neebe told them that the bow fired but he did not know what happened. Mr. Green returned Mr. Neebe's call and spoke with Mr. Neebe as Mr. Neebe was driving to the hospital. Mr. Neebe reiterated that he had shot himself in the foot and that he was not sure what happened. Mrs. Neebe and Mr. Green both drove to the hospital, where they found Mr. Neebe approximately an hour after the incident. Mr. Neebe again reiterated that he did not know what happened and that the crossbow had just fired.

The treating doctors made the following notes at Doylestown Hospital: "Drove self to ED after accidentally shooting self in foot with crossbow while hunting. . . . Arrow entered dorsal surface of boot, went thru [sic] foot, and exited plantar surface of boot." (ECF No. 51, ¶ 11.) He was then transferred to Abington Hospital, which had a trauma unit, where the doctors made the following additional notes: "Patient was

2

harness to in [sic] a tree when accidentally hit his left foot with a crossbow. Removed the bow himself and reports local bleeding that was controlled with pressure." (*Id.* ¶ 14.) Hospital staff made further admission notes the next day, which stated: "73 yo M who was hunting yesterday fell asleep and shot a crossbow arrow into his left foot. Pulled the arrow out, drove the the [sic] hospital." (ECF No. 48-2, ¶ 17.)

As part of this litigation, Mrs. Neebe retained Dr. Stephen Batzer as a liability expert. Dr. Batzer provided a report that gives detailed analysis of a potential design defect in Ravin crossbows and how that defect could cause a Ravin crossbow to misfire in some situations without a trigger pull. But nowhere in the report does Dr. Batzer say a design defect in Mr. Neebe's crossbow caused Mr. Neebe's injury. Nor does Dr. Batzer say why Mr. Neebe's crossbow fired. The report deals with potential design defects with Ravin crossbows more generally.

### C. Procedural Posture

Mrs. Neebe, both as the Administratrix of Mr. Neebe's estate and in her own capacity, filed this product liability action against Ravin Crossbows, LLC, Venatics, Inc., Compass Diversified Holdings, The Compass Group, Velocity Outdoor, Inc., and Crossman (collectively, "Ravin") on October 22, 2019. After discovery, Ravin filed this summary judgment motion and a motion to exclude Dr. Batzer's testimony. Both Motions are now ripe for decision.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quotations omitted). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (quotation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (citation omitted). A plaintiff may not rely on evidence to overcome summary judgment that would not be admissible at trial. *Smith v. City of Allentown*, 589 F.3d 684, 693 (3d Cir. 2009).

## III.   ANALYSIS

In the Complaint, Mrs. Neebe alleges negligence (Count I), strict liability (Count II), misrepresentations and/or non-disclosures of material facts (Count III), breach of express warranty (Count IV), breach of implied warranty (Counts V & VI) and loss of consortium (Count VII). (ECF No. 1, ¶¶ 12-64.) Other than loss of consortium, which is derivative of the other claims, each of these claims requires Mrs. Neebe to prove causation. *See Grove v. Port Auth. Of Allegheny Cty.*, 218 A.3d 877, 889 (Pa. 2019) (negligence requires showing of proximate cause); *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 365 (Pa. 2014) (strict liability requires showing that the defect proximately caused harm); Restatement (Second) of Torts § 402B (reliance on

4

misrepresentation of material fact must cause injury); *Samuel-Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 35 (Pa. 2011) (breach of express warranty requires showing that breach was the proximate cause of the harm); *Byrd v. Essex Silverline Corp.*, No. CIV.A. 04-4827, 2008 WL 81887, at *3 (E.D. Pa. Jan. 8, 2008) (breach of implied warranty of merchantability claim requires proof of a causal connection between the defendant's breach and the plaintiff's injury or damage). She has no admissible evidence to prove causation, so her claim fails.

### A. Preliminary Admissibility Determinations

Hearsay is a statement that: "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is inadmissible unless a federal statute, the Supreme Court, or the Federal Rules of Evidence provide otherwise. *See* Fed. R. Evid. 802. Much of Mrs. Neebe's causation evidence constitutes out-of-court statements that she offers to establish what happened, including testimony relating Mr. Neebe's understanding of events and medical records that do the same. Because this evidence is hearsay, the Court can consider it only if it falls within an exception to the hearsay rules. *See Smith*, 589 F.3d at 693.

#### 1. Testimony about Mr. Neebe's statements

Mrs. Neebe argues that the voicemails Mr. Neebe left her and Mr. Green and Mr. Neebe's statements at Doylestown Hospital constitute excited utterances and present sense impressions. They are neither.

5

### a. Excited utterance

An excited utterance is a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). The Third Circuit has elaborated that this test requires: "(i) a startling occasion; (ii) a statement relating to the circumstances of the startling occasion; (iii) a declarant who appears to have had opportunity to observe personally the events; and (iv) a statement made before there has been time to reflect and fabricate." *United States v. Brown*, 254 F.3d 454, 458 (3d Cir. 2001); *see McKinley v. Meier*, 456 F. Supp. 3d 673, 677 (E.D. Pa. 2020).

The voicemails that Mr. Neebe left for Mr. Green and Mrs. Neebe while he was driving to the hospital do not qualify. Mr. Neebe left those voicemails 10-20 minutes after the incident and after he recovered from the shock enough to remove the bolt from his foot, climb down the tree stand, walk to his car, and start driving himself to the hospital. Nothing in the record indicates his level of stress or excitement during these messages. The lack of temporal proximity to the stressful event and Mr. Neebe's ability to act in a deliberate manner both suggest he was no longer under immediate stress and excitement. *See, e.g., Guest v. Oak Leaf Outdoors, Inc.*, Civil Action No. 10–5288, 2012 WL 1521925, at *3-4 (E.D. Pa. 2012) (statements made 6 minutes after incident lacked immediacy).

The statements that Mr. Neebe made to Mrs. Neebe and Mr. Green at Doylestown Hospital also do not qualify. He made those statements after even more time had passed since the incident itself. By then, he had received medical treatment. And, again, nothing in the record suggests that he was particularly agitated or

6

experiencing stress. Instead, the passage of time and the conduct preceding the statements suggests that Mr. Neebe had time to reflect on the incident, which means that his statements were not excited utterances.

### b.     Present sense impression

A present sense impression is a "statement describing or explaining an event or condition, made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1); *see, e.g.*, *United States v. Green*, 556 F.3d 151, 155 (3d Cir. 2009); *United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir. 1998). "The fundamental premise behind this hearsay exception is that substantial contemporaneity of event and statement minimizes unreliability due to the declarant's defective recollection or conscious fabrication." *Green*, 556 F.3d at 155 (quotation omitted).

Mr. Neebe's statements in voicemails and in person to Mrs. Neebe and Mr. Green do not qualify as statements of present sense impression for the same reason that they do not qualify as excited utterances: the passage of time, coupled with circumstantial evidence demonstrating Mr. Neebe's cool-headed, rational demeanor. Given the way that Mr. Neebe gathered himself and conducted himself after shooting himself, the Court concludes that Mr. Neebe's statements occurred in a context where he could reflect on the incident and, consciously or unconsciously, fabricate his statements.

### 2.     Medical records

The medical records exception to hearsay relates to a statement that: "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception;

7

or their general cause." Fed. R. Evid. 803(4); *see also United States v. Gonzalez*, 905 F.3d 165, 199-200 (3d Cir. 2018). The key question is "whether the statements were made for the purpose of securing medical treatment, whether the statement was reasonably pertinent to such treatment, and whether the statement was reasonably relied upon for treatment." *Smith v. City of Phila.*, No. 06–4312, 2009 WL 3353148, at *2-3 (E.D. Pa. Oct. 19, 2009).

The hospital notes describing the damage done to Mr. Neebe's foot and indicating a crossbow bolt caused the damage are admissible under the medical records exception to hearsay. But notes regarding Mr. Neebe's impression of what caused the crossbow to fire are not relevant to medical diagnosis or treatment. They therefore do not fall within the medical records exception.

### B.  Dr. Batzer's Expert Report

Dr. Batzer's expert report does not create a disputed factual question about causation. The report opines on a potential defect of Ravin crossbows. It offers no evidence that such a defect caused Mr. Neebe's crossbow to fire. In his deposition, Dr. Batzer conceded that he cannot say what caused Mr. Neebe's crossbow to fire in this specific case. Thus, even assuming that the report is admissible (over both a pending *Daubert* challenge and hearsay concerns), the report does not allow Mrs. Neebe to establish the causation element of any of her claims.

### IV. CONCLUSION

Mrs. Neebe's claims suffer from the fact that she has no one available to attest to what happened when Mr. Neebe's crossbow fired. Because she lacks any evidence as to that key piece of her claims, she has no basis to proceed to trial. The Court will grant Ravin's Motion for Summary Judgment. An appropriate Order follows.

**BY THE COURT**:

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 2, 2021